UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERRY L. MCINTIRE,

    Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

CASE NO.   C07-5299RJB-KLS

REPORT AND RECOMMENDATION

Noted for April 11, 2008

Plaintiff, Terry L. McIntire, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Robert J. Bryan's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 50 years old.[1] Tr. 35. He has a high school education, two years of college course work and past work experience as a computer programmer and an experimental test mechanic. Tr.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

27, 61, 66.

On December 4, 2003, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of August 31, 2002, due to headaches, fibromyalgia, knee pain, a heart murmer, anxiety, and depression. Tr. 13, 35, 52-54, 60.  His applications were denied initially and on reconsideration. Tr. 13, 35-37, 45.  A hearing was held before an administrative law judge ("ALJ") on August 8, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 481-504.

On September 22, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of osteoporosis, bilateral degenerative joint disease of the knees and shoulders, ischemia, and depression;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform sedentary work, with certain other non-exertional limitations, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 13-28.  Plaintiff's request for review was denied by the Appeals Council on April 20, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981, § 416.1481.

On June 15, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1).  The administrative record was filed with the Court on August 20, 2007. (Dkt. #10).  Plaintiff argues the ALJ improperly found him to be not disabled, because the residual functional capacity with which the ALJ assessed him was erroneous.  For the reasons set forth below, however, the undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the ALJ's decision be affirmed.  Although plaintiff has requested oral argument in this matter, the undersigned finds such argument to be unnecessary here.

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the following residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to (1) lift and/or carry no more than 10 pounds at a time, with occasional lifting or carrying of articles such as docket files, ledgers and small tools; (2) to stand and/or walk up to two hours in an eight hour workday; (3) to sit up to six hours in an eight hour workday; with (4) no limitations with regard to pushing or pulling. The claimant can perform a job where he is only occasionally required to

>climb ramps or stairs, stoop, kneel, crouch, crawl, perform overhead reaching or reaching with his left upper extremity, and is never required to climb ropes or scaffolds. The claimant should avoid concentrated exposure to extreme cold and hazards. The claimant is not significantly limited in the ability to remember locations nor in the ability to understand and remember simple instructions. The claimant is moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to complete a normal workday and week, and in social interactions. The claimant has no significant limitations in decision-making. He is therefore capable of performing unskilled work which involves limited public contact.

Tr. 17.

Plaintiff argues this assessment of his residual functional capacity is not supported by substantial evidence and is based on legal error. Plaintiff, however, is challenging only the mental portion of this assessment. His argument is an interesting one. He states that the ALJ first found the medical evidence in the record supported the following mental limitations:

>The claimant is not significantly limited in the ability to remember locations nor in the ability to understand and remember simple instructions. The claimant is moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to complete a normal workday and week, and in social interactions. The claimant has no significant limitations in decision-making.

Id. Plaintiff then goes on to assert that the sentence immediately following this list of mental limitations – "He is therefore capable of performing unskilled work which involves limited public contact" – constitutes the ALJ's assessment of his mental residual functional capacity. Id. Having thus parsed the ALJ's stated findings, plaintiff concludes that although the ALJ addressed his limitations in performing detailed work and social interactions in the residual functional capacity assessment, notably absent was any limitation on his ability to complete a normal workday or workweek.

The undersigned finds no support in the law for this interpretation of the ALJ's residual functional capacity assessment, and, indeed, it defies both logic and commonsense. As support for this argument, plaintiff points to 20 C.F.R. § 404.1545(a)(1), which states in relevant part that "[y]our residual functional capacity is the most you can still do despite your limitations," and to 20 C.F. R. § 404.1545(a)(4), which also states in relevant part that "[w]hen we assess your residual functional capacity, we will consider your ability to meet the . . . mental . . . requirements of work." Treating the last sentence of the ALJ's findings set forth above as the ALJ's actual residual functional capacity assessment, plaintiff argues that assessment fails to comply with this regulatory language and is not supported by substantial evidence, because it did not include the limitation on completing a normal workday or workweek.

REPORT AND RECOMMENDATION
Page - 4

1    Plaintiff also relies on 20 C.F.R. § 404.1545(c), which reads in relevant part as follows:

2    Mental abilities. When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual
3    functional capacity for work activity on a regular and continuing basis.

4 This language, plaintiff argues, makes clear that the assessment of a claimant's "mental limitations and

5 restrictions" are separate and distinct from the actual residual functional capacity determination. That is,

6 the ALJ first must assess the mental limitations and restrictions, and then he makes a determination as to

7 the claimant's residual functional capacity. As further support for this position, plaintiff also emphasizes

8 the "despite your limitations" language contained in 20 C.F.R. § 404.1545(a)(1). This language, he

9 asserts, clearly shows that a residual functional capacity determination:

10   [I]s supposed to be something separate from the claimant's limitations, since, by definition, limitations are only a part of the term's definition. Simply stated, limitations
11   state what a particular claimant can't do; the RFC [residual functional capacity] describes what a particular claimant "can do in a work setting." 20 C.F.R. §
12   404.1545(a).

13 (Dkt. #14, p. 2).

14    Were the undersigned to take the kind of myopic approach plaintiff is advocating here to reviewing

15 an ALJ's residual functional capacity assessment, perhaps the result would be different. However, it is

16 quite clear that the entire paragraph quoted above from the ALJ's decision constitutes his assessment of

17 plaintiff's residual functional capacity. No other reading of that paragraph, or, indeed, of the

18 determination the ALJ made on this issue, makes sense. Were the Court to adopt plaintiff's approach, in

19 essence an ALJ would be required to make a determination as to a claimant's limitations, state what those

20 limitations are, and then restate all of them as part of a separate residual functional capacity determination.

21 That would mean for purposes of this case that after having set forth plaintiff's mental limitations, the ALJ

22 would have to re-list all of them again in the sentence that followed immediately thereafter. Such an

23 approach would be both redundant and an inefficient use of the ALJ's time.

24    Nor is there support for plaintiff's approach in the Commissioner's regulatory scheme. First, the

25 use of the term "despite" in 20 C.F.R. § 404.1545(a)(1) does not preclude use by an ALJ of a claimant's

26 limitations in describing that claimant's residual functional capacity. Indeed, the further inclusion of the

27 word "limitations" in that regulatory provision clearly indicates that the phrasing of a claimant's residual

28 functional capacity in terms of such limitations is contemplated. Second, the phrase "[w]hen we assess

REPORT AND RECOMMENDATION
Page - 5

your residual functional capacity, we will consider your ability to meet the . . . mental . . . requirements of work" employed in 20 C.F.R. § 404.1545(a)(1), also clearly envisions framing the residual functional capacity determination in light of a claimant's limitations. That is, consideration of a claimant's ability to meet the mental requirements of work, necessarily includes consideration of any limitations applicable to or restrictive of that ability.

It is true that 20 C.F.R. § 404.1545(c) states that the assessment of a claimant's mental limitations and restrictions is to come before the determination of the claimant's residual functional capacity is made, but this will inevitably be so in every case. In other words, an ALJ by necessity first will have to assess a claimant's mental limitations and restrictions before making a final determination regarding the claimant's ability to meet the mental requirements of work. Again, this does not mean though that those limitations and restrictions cannot be made part of the residual functional capacity determination.

Plaintiff, furthermore, contradicts himself by stating that this determination is something separate from the claimant's limitations, because, by definition, those limitations are a part of the determination. However, something cannot be both separate <u>and</u> part of the same thing. In addition, the undersigned rejects plaintiff's assertion that the use of the word "can" in 20 C.F.R. § 404.1545(a)(1) means that the residual functional capacity determination must always be stated in the positive – i.e., what a claimant <u>can</u> do – and never in the negative – i.e., what the claimant <u>cannot</u> do (or, to put it another way, is limited from doing). This is an unduly restrictive reading of the regulatory language. Again, nothing in that language prohibits the determination as to what a claimant can do despite his or her limitations from being couched in terms of those limitations. This the ALJ properly did.

Plaintiff argues the ALJ's alleged error here is made even more apparent when looking at the other mental limitations the ALJ included in the residual functional capacity determination. Thus, for example, plaintiff states that the limitations on social interactions and the ability to understand, remember and carry out detailed instructions – which, as with the limitation on completing a normal workday or workweek, were listed immediately prior to what plaintiff terms the ALJ's residual functional capacity determination – were both accounted for in that determination when the ALJ stated he was capable of performing unskilled work involving little public contact. Plaintiff's argument only carries weight, however, if the last sentence in the ALJ's residual functional capacity assessment is separated out from the rest of the

REPORT AND RECOMMENDATION
Page - 6

paragraph. But just as – or, better yet, more – reasonably, that sentence can be read merely as a further description of the ALJ's determination regarding plaintiff's residual functional capacity, and therefore not incompatible with the ALJ's assessment of his mental limitations.[3]

In addition, plaintiff points to the language of SSR 96-8p as support for the position he has taken in this case. But that language no more supports this position than does that of 20 C.F.R. § 404.1545(a) or 20 C.F.R. § 404.1545(c). Indeed, the language of SSR 96-8p actually supports the approach taken by the ALJ here. For example, SSR 96-8p states in relevant part as follows:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

1996 WL 374184 *1. This language thus expressly states that the residual functional capacity assessment itself must include an identification of the claimant's actual limitations and restrictions. No distinction is made here regarding a separate finding of limitations, followed by an assessment of the claimant's residual functional capacity. Rather, the two are one and the same. Indeed, even more is required to be subsumed within the actual residual functional capacity determination:

> NARRATIVE DISCUSSION REQUIREMENTS
>
> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Id. at *6-*7 (footnote omitted). This the ALJ more than satisfactorily did. See Tr. 17-26.

Accordingly, the undersigned finds that the whole paragraph quoted above from the ALJ's decision constitutes the ALJ's assessment of plaintiff's residual functional capacity. Because the ALJ included in that paragraph the limitation on completing a normal workday or workweek, plaintiff's argument that the ALJ erred by failing to do so is without merit. As pointed out by defendant, the undersigned further notes that the ALJ included this particular limitation in the hypothetical question he posed to the vocational

---

[3] As such, the undersigned finds no "gap" between the ALJ's mental limitation findings and his residual functional capacity assessment as argued by plaintiff. Indeed, as discussed previously, the distinction plaintiff is attempting to create here between the mental limitations found by the ALJ and his residual functional capacity assessment is a false dichotomy. As such, the Court is not "left wondering" about any potential oversight or hidden determination by the ALJ. (See Dkt. #14, p. 3).

REPORT AND RECOMMENDATION
Page - 7

expert at the hearing, along with the other limitations noted above that were contained in his assessment of plaintiff's residual functional capacity. Tr. 499-501. Thus, even if the undersigned were to find the ALJ failed to properly put all of plaintiff's mental limitations within the residual functional capacity assessment itself, any such failure was harmless, as they still were posed to the vocational expert, who testified that given those limitations, there were other jobs that an individual such as plaintiff could do. Tr. 501-02. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant).

Plaintiff argues that inclusion of the above moderate limitation on his ability to complete a normal workday or workweek in the hypothetical question posed to the vocational expert fails to account for what he claims to be a conflict in the vocational expert's testimony. Specifically, in answer to the question of how many hours or days per month an individual could miss and still maintain competitive employment in the jobs identified in response to the hypothetical question posed by the ALJ, the vocational expert further testified that an individual who has two or more unscheduled absences per month is "not going to maintain employment" in those jobs. Tr. 502. Plaintiff argues that a "moderate" limitation in the ability to complete a normal workday and workweek equates with two or more unscheduled absences per month.

Plaintiff, however, points to nothing in the law or record to support this assertion. Indeed, the fact that two or more unscheduled absences per month would result in a failure to maintain employment would tend to indicate that such a limitation is not moderate, but rather marked or severe. Nor does the vocational expert's testimony itself indicate the presence of any ambiguity or confusion regarding whether he believed a moderate limitation on the ability to maintain a normal workday or workweek equates with being absent that many times per month, though the ALJ may have began talking about missing work on an occasional basis in prefacing his question. Furthermore, plaintiff, who appears to have been represented at the hearing by the same counsel who is representing him now, had the opportunity to question the vocational expert as to any such perceived ambiguity or confusion on his part, but failed to avail himself of that opportunity. Again, therefore, the undersigned finds no error here.

Plaintiff further argues the ALJ failed to evaluate his ability to work on a regular and continuing basis in assessing his residual functional capacity as required by SSR 96-8p. That social security ruling does require that the ALJ discuss a claimant's "ability to perform sustained work activities in an ordinary

1  work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent
2  work schedule)." 1996 WL 374184 at *7.  As explained above, however, and contrary to plaintiff's
3  assertion, the ALJ did incorporate into his residual functional capacity determination a moderate limitation
4  on plaintiff's ability to complete a complete a normal workday or workweek.  Accordingly, the
5  undersigned finds no error on the part of the ALJ here as well.

## CONCLUSION

7  　　　Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was
8  not disabled, and should affirm the ALJ's decision.
9  　　　Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),
10 the parties shall have ten (10) days from service of this Report and Recommendation to file written
11 objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those
12 objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit
13 imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 11, 2008**,
14 as noted in the caption.
15 　　　DATED this 13th day of March, 2008.

　　　　　　　　　　　　　　　　　　*/s/ Karen L. Strombom*
　　　　　　　　　　　　　　　　　　Karen L. Strombom
　　　　　　　　　　　　　　　　　　United States Magistrate Judge